**Michael A. CAPUTO, et al.,**
**Plaintiffs, Appellants,**

v.

**BOSTON EDISON COMPANY,**
**Defendant, Appellee.**

**No. 90–1684.**

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1990.

Decided Jan. 17, 1991.

Chester L. Tennyson, Jr., Boston, Mass., for plaintiffs, appellants.

William F. Lee with whom Michael R. Heyison, Elizabeth Harlow and Hale and Dorr, Boston, Mass., were on brief, for defendant, appellee.

Before SELYA, Circuit Judge, BROWN,* Senior Circuit Judge, and BOWNES, Senior Circuit Judge.

BOWNES, Senior Circuit Judge.

This is an appeal from the district court's granting of defendant Boston Edison's summary judgment motions on the plaintiff's claims for both negligent and intentional infliction of emotional distress. The plaintiff-appellant, Michael A. Caputo, has chosen to appeal only his intentional infliction claim.

## I. BACKGROUND

Caputo claims to have been exposed to excessive radiation while working for approximately three months as a boilermaker/assistant foreman for an independent contractor at Boston Edison Company's Pilgrim Nuclear Power Station ("Pilgrim Station") in Plymouth, Massachusetts. Caputo began working at Pilgrim Station on January 5, 1980. According to common practice, he wore a protective suit and carried two radiation monitoring devices, a Thermoluminescent Dosimeter ("TLD")

* Of the Fifth Circuit, sitting by designation.

and a Self Reading Pocket Dosimeter ("SRPD"). Early in February 1980, Caputo, while working in the Torus area of the plant, had a high reading of .910 rem on his SRPD while his TLD revealed only .590 rem.[1]

Although he continued to work in the same Torus area until February 5, 1980, his monitoring devices and work schedule were intermittently suspended without full explanation until February 28, 1980, when he met with Health Physics employees of Boston Edison. The company asked him to sign a document attesting to particular details of the incident. This he refused to do, also initially refusing to return to work in the Torus area. On March 4, 1980, again working in the Torus area, Caputo had another high dosimeter reading. He received again what he considered to be conflicting and unsettling information from Boston Edison.

As a result of perceived health problems, preoccupation with the possibility of future health problems, and depression, Caputo commenced this action in Massachusetts Superior Court, Middlesex County, on January 3, 1983. Pursuant to the Price–Anderson Amendment Act of 1988,[2] the action was removed to the United States District Court for the District of Massachusetts on September 19, 1988.

Caputo's surviving claim for intentional infliction of emotional distress is joined by loss of consortium claims presented by his three minor children, Nicola, Christina and Anthony Caputo.[3] The district court and the parties have agreed that these claims are derivative; i.e., their success or failure depends upon the success or failure of Caputo's claims. See *Mouradian v. General Electric Co.*, 23 Mass.App. 538, 503 N.E.2d 1318, 1321 (any derivative claim "would require proof of a tortious act that caused injury" to the plaintiff), *review denied*, 399 Mass. 1105, 507 N.E.2d 1056 (1987).

When Caputo's action was commenced in 1983, Boston Edison forwarded a copy of the plaintiff's Complaint to the Nuclear Regulatory Commission ("NRC"). The NRC then requested further information, which was provided by Boston Edison on March 16, 1983. The plaintiff contends that Boston Edison's treatment of him in 1980 was in part a cover-up to avoid informing the NRC of the incident.

## II. SUMMARY JUDGMENT

■ Summary judgment is not a "disfavored procedural shortcut"; it is instead an "integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is proper if there is no "genuine issue of material fact" in the pleadings or in matters "outside" the pleadings such as "depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any...." Fed. R.Civ.P. 56(c). It is also proper if the plaintiff fails to produce evidence of proximate cause. *Celotex Corp.*, 477 U.S. at 319, 106 S.Ct. at 2550. The phrase "genuine issue of material fact" has been defined:

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might af-

---

1. Radiation exposure is measured in units called rems. From February 8 through February 25, 1980, Caputo's TLD badge recorded a cumulative radiation dose of 5.39 rem while his daily SRPD readings totalled only .940 rem. In context, the average American receives .300 rem of radiation yearly from natural sources like radon gas. See *Bubash v. Pennsylvania Electric Co.*, 717 F.Supp. 297, 299 (M.D.Pa.1989). Hence, a normal lifetime dose of natural radiation would be 19.5 rem. In addition, "[t]he average American by age 64 will receive about 6.5 rem of radiation from x-rays." *Johnston v. United States*, 597 F.Supp. 374, 390 (D.Kan. 1984).

2. 42 U.S.C. § 2210(n)(2) (1990) ("With respect to any public liability arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place ... shall have original jurisdiction."). Massachusetts substantive law applies to the plaintiff's claim because the alleged radiation exposure occurred within the state. See 42 U.S.C. § 2014(hh) (1982 & Supp.1989).

3. Helena Caputo and Elise Caputo, Caputo's putative wife and daughter, were two of the original plaintiffs. They voluntarily dismissed their consortium claims on September 25, 1989, because neither had a biological, adoptive or marital relationship to Mr. Caputo.

fect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

By the time the Caputo case was removed to federal court in 1988, more than five years of discovery had ensued without designation of expert witnesses or identification of alleged injuries by the plaintiff. In the district court "[p]laintiff [did] not dispute that two requisites of each of his legal theories are proof of injury and causation." The court, however, found no competent evidence that Caputo's claim of intentionally inflicted emotional distress was caused by the conduct of Boston Edison. *Caputo v. Boston Edison Co.*, C.A. No. 88–2126–Z, 1990 WL 98694 (D.Mass. July 9, 1990).

In reviewing the correctness of a summary judgment, the question is

> "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law."

*De Arteaga v. Pall Ultrafine Filtration Corp.*, 862 F.2d 940, 941 (1st Cir.1988) (quoting *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12). " '[M]erely colorable' " or " 'not significantly probative' " evidence is insufficient to forestall summary judgment. *Id.* at 941 (quoting *Liberty Lobby, supra*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11).

> The question is not whether there is literally *no* evidence favoring the non-movant, but whether there is any upon which a jury could properly proceed to find a verdict in that party's favor.

*Id.* at 941 (citing *Liberty Lobby, supra*, 477 U.S. at 251, 106 S.Ct. at 2511).

In the instant case, the related issues of proof of injury and causation of injury, both essential in order for the plaintiff to avert summary judgment, have not been adequately established. Instead, only "conclusory allegations of emotional distress caused by defendant's conduct" have been articulated by the plaintiff. *Caputo v. Boston Edison Co.*, C.A. No. 88–2126–Z (D.Mass. July 9, 1990). And it is the plaintiff who bears the burden of proving by a preponderance of the evidence both injury and causation. *Lynch v. Merrell–Nat'l Laboratories*, 830 F.2d 1190, 1197 (1st Cir. 1987). Viewing the evidence in the light most favorable to the plaintiff and indulging all inferences favorable to him, *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988), we conclude that "summary judgment is mandated" because "plaintiff has failed to 'establish the existence of an element essential' to his claims, namely, injury caused by defendant." *Caputo v. Boston Edison Co.*, C.A. No. 88–2126–Z (D.Mass. July 9, 1990) (quoting *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552).

Application of the Rule 56 standard in this case is heightened by the additional requirements for proving intentional infliction of emotional distress under current Massachusetts law.

### III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ In 1976 in *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315 (1976), the Massachusetts court held for the first time that one "who, by extreme and outrageous conduct and without privilege, causes severe emotional distress to another is subject to liability for such emotional distress even though no bodily harm may result." *Id.* 355 N.E.2d at 318. *See also* Annotation, *Modern Status of Intentional Infliction of Mental Distress as Independent Tort; "Outrage,"* 38 A.L.R.4th 1022 (1990).

Finding the extension of intentional infliction claims to cases without bodily injury "both warranted and desirable," *Agis*, 355 N.E.2d at 317, the court adopted the elements of the tort set forth in Section 46 of the *Restatement (Second) of the Law of*

*Torts* (1965): [4]

It must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . . ; (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community" . . . ; (3) that the actions of the defendant were the cause of the plaintiff's distress . . . ; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it."

*Agis*, 355 N.E.2d at 318–19.

*Agis* explicitly endorses this cause of action while cautioning, in keeping with the *Restatement,* that " 'the door to recovery should be opened but narrowly and with due caution.' " *Agis*, 355 N.E.2d at 318 (quoting *Barnett v. Collection Serv. Co.,* 214 Iowa 1303, 242 N.W. 25, 28 (1932)). In addition to the high threshold required for actionable claims under § 46, the *Restatement* also suggests that claims be weeded out at the summary judgment stage:

*Court and jury.* It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.

Comment h, *Restatement (Second) of Torts* (1965) at § 46. Hence, the second prong of the tort, that of assessing the extent and nature of the defendant's con-

duct, can be decided by the court without becoming a jury question. *See Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 615 (1977) (holding that "[i]t is for the court to determine" whether defendant's conduct may be deemed "extreme and outrageous" and for the jury to ascertain whether "the conduct has been sufficiently extreme and outrageous to result in liability"). *But see Armano v. Federal Reserve Bank*, 468 F.Supp. 674, 676 (D.Mass.1979) (denying defendant's motion for summary judgment because issue of extreme and outrageous conduct deemed factual, hence a jury question).

The *Restatement* also suggests summary judgment on the issue of severity of injury, the fourth prong of the tort:

*Severe emotional distress.* The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. . . . It is only where it is extreme that the liability arises.

It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.

Comment j, *Restatement (Second) of Torts* (1965) at § 46. *See Leithead v. American Colloid Co.,* 721 P.2d 1059 (Wyo.1986) (applying § 46(h) and (j) to intentional infliction claim). *See also Anderson v. W.R. Grace*, 628 F.Supp. 1219, 1228 (D.Mass. 1986) (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171, 181 (1982)) (holding that plaintiff can recover " 'only

---

**4.** Most jurisdictions presently recognize some form of recovery for recklessly or intentionally inflicted emotional distress, at least in specific circumstances. The Supreme Court in a recent case has noted: " 'The tort of intentional infliction of mental distress as described in § 46 of the Restatement [ (Second) of Torts] can be safely characterized as the general rule in the United States. . . . As of 1977, 37 jurisdictions had recognized the tort.' " *Atchison, Topeka & Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 568–69 n. 16, 107 S.Ct. 1410, 1417 n. 16, 94 L.Ed.2d 563 (1987) (quoting *Leithead v. American Colloid Co., 721* P.2d 1059, 1066 (Wyo. 1986)). *See, e.g., Payton v. Abbott Labs,* 386 Mass. 540, 437 N.E.2d 171 (1982) (recognizing rule and emphasizing limited range of emotion-

al claims without physical injury under *Agis*); *Harris v. Jones,* 281 Md. 560, 380 A.2d 611 (1977) (recognizing rule). *See also* Ingber, *Alternative Compensation Schemes and Tort Theory: Rethinking Intangible Injuries: A Focus on Remedy,* 73 Calif.L.Rev. 772, 788 n. 77 (elucidating rule and stating that both reckless and intentional tortfeasors "are consciously acting in a manner likely to cause injury" and should "both be treated as behaving willfully"); Givelber, *The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct,* 82 Colum.L.Rev. 42 (1982) (delineating jurisdictions adopting the *Restatement (Second)* § 46 formulation).

for that degree of emotional distress which a reasonable person, normally constituted, would have experienced under [the] circumstances' ").

Intentional infliction of emotional distress cases have also emphasized the causal nexus between defendant's conduct and plaintiff's injury, which constitutes the third requisite of § 46 as stated in *Agis:* "that the actions of the defendant were the cause of the plaintiff's distress." 355 N.E.2d at 319. It is clear that causation must be established to uphold an *Agis* claim. *See, e.g., Kinan v. City of Brockton*, 876 F.2d 1029, 1036 (1st Cir.1989) (holding that "[i]n order to establish liability for emotional distress under Massachusetts law, four elements must be established").

In some cases severe emotional distress may be inferred from the extreme and outrageous nature of the defendant's conduct alone. *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148 (Me.1979). *See also Dr. Franklin Perkins School v. Freeman*, 741 F.2d 1503, 1522 (7th Cir.1984) (applying Massachusetts law to deny an intentional infliction claim because such a claim "usually involves repeated harrassment [sic]").

The case before us necessarily invokes all four prongs of the *Restatement* test for intentional infliction of emotional distress claims as articulated in *Agis*. 355 N.E.2d at 318. First, did Boston Edison intend to inflict emotional distress or should it have known the likely result of its reckless conduct? We affirm the district court's rejection of plaintiff's Count II alleging "willful and wanton misconduct" on the part of Boston Edison.

The second prong of the *Agis* test is also not met. While Boston Edison might have been slow to determine the actual problem with Caputo's contradictory dosimeter readings and, in fact, did not report the aberrational readings to the NRC until Caputo's claim was filed in 1983, there is no Massachusetts or First Circuit precedent suggesting that its behavior in any manner approached the "extreme and outrageous" conduct "utterly intolerable in a civilized community" condemned in *Agis*. 355 N.E.2d at 319. *See, e.g., Foley v. Polaroid Corp.*, 400 Mass. 82, 508 N.E.2d 72 (1987) (overturning previous damage award to plaintiff and concluding that persistent on-job harassment insufficiently "outrageous" to support intentional infliction of emotional distress claim).

The third prong of the *Agis* test, causation, is likewise flunked by Caputo. Even Dr. Bloch, Caputo's treating psychiatrist, could adduce no causal connection between Boston Edison's conduct and Caputo's emotional state. It was her opinion that Caputo's depression pre-dated his alleged exposure to radiation at Boston Edison. There was, therefore, no causal link between Boston Edison and Caputo's depression. Further, her opinion was inconclusive regarding Caputo's claim of post-traumatic stress.

We need not reach the issue of whether expert testimony is required under Massachusetts law for intentional infliction of emotional distress claims unaccompanied by physical injury. In this case, the expert testimony was both inconclusive and negative regarding the claim. Caputo's intentional infliction claim was not substantiated by any evidence. In the words of the district court, the plaintiff's expert's "opinion of a lack of causal connection is uncontradicted." *Caputo v. Boston Edison Co.*, C.A. No. 88–2126–Z (D.Mass. July 9, 1990).

## IV. CONCLUSION

Because Caputo's appeal of his claim of intentional infliction of emotional distress fails under Massachusetts law, we affirm the district court's summary judgment for defendant Boston Edison. The derivative claims of Mr. Caputo's minor children must also fail.

*Affirmed.* Costs in favor of defendant-appellee.