Zambon v. Schneider                    CV-94-553-JD  03/15/96
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Peter D. Zambon

     v.                                    Civil No. 94-553-JD

Schneider Nat'l Carriers, Inc., et al.


                          O R D E R


     The plaintiff, Peter D. Zambon, brought this diversity

action under the New Hampshire declaratory judgment act seeking a

declaration of insurance coverage under his operating agreement

with defendant Schneider National Carriers, Inc. ("Schneider")

and under an insurance policy issued in favor of Zambon by the

Insurance Company of the State of Pennsylvania ("ICOSP").  Before

the court are Zambon's motion for summary judgment against

Schneider and ICOSP (document no. 8)[1] and Schneider's motion for

summary judgment against Zambon (document no. 9).

_____

     [1]Although Zambon's motion for summary judgment included
specific allegations of coverage under its policy with ICOSP and
its agreement with Schneider, its accompanying memorandum of law
addressed only its claim against Schneider.  Without filing its
own motion for summary judgment, ICOSP responded to Zambon's
allegations by filing an objection to Zambon's motion, to which
Zambon replied.  ICOSP in turn filed a response to Zambon's
reply, to which Zambon again replied.  Both parties have had more
than ample opportunity to raise arguments in favor of their
respective positions and have submitted supporting materials in
accordance with Rule 56.

## Background

In November 1987, Zambon, a New Hampshire resident, and Schneider, a Nevada corporation with its principal place of business in Wisconsin, entered into an "Independent Contractor Operating Agreement" ("agreement") under which Schneider subcontracted freight carriage contracts to Zambon, a tractor-trailer operator.[2]  Under the agreement, Zambon leased his tractor to Schneider, which, in turn, leased the tractor and a trailer back to Zambon.  The agreement took effect at the time it was signed and by its terms was to continue until cancelled by either party.  See Contract 1 ¶ 10; Contract 2 ¶ 11.

The agreement provided that Schneider was "legally obligated to maintain insurance coverage for the protection of the public pursuant to 49 U.S.C. § 10927 and the regulations of the [Interstate Commerce] Commission" and required Zambon to purchase "bobtail" insurance, i.e., insurance covering liability Zambon incurred while not carrying any freight.  Contracts 1 & 2 ¶ 7.

---

[2]The parties have been unable to produce a copy of the document that formed the contract between Zambon and Schneider, and now dispute whether the standard contract submitted by Zambon with his motion for summary judgment ("contract #1") or the standard contract submitted by Zambon with his objection to Schneider's motion for summary judgment ("contract #2") constitutes the terms of their agreement.  The court notes that there are significant differences between these documents and, as such, considers the terms of both documents in analyzing the issues before it.

2

Purportedly pursuant to its obligation under the agreement, Schneider maintained coverage for Zambon through a $5 million surety bond, with an effective date of March 1, 1987, that named Schneider as the principal. Zambon opted to procure bobtail insurance through Schneider, which had negotiated a policy from ICOSP specifically for the benefit of its independent contractors. ICOSP is a Pennsylvania corporation with its principal place of business in New York.

The ICOSP policy Schneider purchased for the year commencing on June 30, 1988, provided liability insurance of up to $500,000 per accident or loss on all non-passenger automobiles owned by Schneider's independent contractors and the trailers Schneider leased to its independent contractors. The policy also purported to provide uninsured motorist coverage where such coverage was required by the law of the state in which the vehicle was licensed. See ICOSP Policy Declarations & Endorsement 10. The amount of uninsured motorist coverage was limited to "the minimum liability requirements under the financial responsibility law of the state of the [insured's] legal residency [sic] or any property damage loss [sic]." Endorsement 5.

3

Endorsement 3 to the policy provided:

LIABILITY INSURANCE . . . is changed as follows:

A.  The following exclusions are added:
    This insurance does not apply to:
    1.  A covered **auto** while used to carry
        property in any business.

Neither the uninsured motorist section of the policy nor the endorsements thereto mention such an exclusion. The certificate of insurance incorporated into the policy listed uninsured motorist coverage as a part of the "non-trucking liability" covered under the policy.

The parties do not dispute that the tractor was registered in Illinois pursuant to the agreement. However, Zambon maintained title to the vehicle in New Hampshire and has alleged that the vehicle was "principally garaged" in New Hampshire during the 1988-89 policy term.

On June 19, 1989, Zambon was involved in an accident while transporting property under the agreement in West Virginia. Zambon filed a state court action in Ohio against the other driver involved in the accident. The action was settled for $50,000, the maximum amount available under the other driver's insurance policy. As the losses Zambon incurred exceeded this amount, Zambon filed claims with both Schneider and ICOSP to recover the deficiency. Schneider denied the claim on the ground that the vehicle was not principally garaged in New Hampshire and

4

thus not subject to the New Hampshire uninsured motorist statute. ICOSP also apparently denied the claim. Zambon brought this action against Schneider and ICOSP seeking a declaration of coverage for the deficiency.

## Discussion

Summary judgment is appropriate when material facts are undisputed and the moving party is entitled to judgment as a matter of law. Rodriguez-Garcia v. Davila, 904 F.2d 90, 94 (1st Cir. 1990) (citing Fed. R. Civ. P. 56(c)). The burden is on the moving party to establish the lack of a genuine, material factual issue, Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991).

Zambon has asserted his claims for uninsured motorist coverage under New Hampshire statutory law and under the ICOSP policy. The court addresses these theories seriatim.

I. Zambon's Claim Under N.H. Rev. Stat. Ann. § 264:15

Zambon argues that summary judgment is warranted against both Schneider and ICOSP because New Hampshire's uninsured

5

motorist statute, N.H. Rev. Stat. Ann. ("RSA") § 264:15, requires motor vehicle insurance policies covering vehicles principally garaged in New Hampshire to provide coverage for claims against uninsured and underinsured motorists. Schneider and ICOSP contend for a variety of reasons that neither the Zambon-Schneider agreement, the surety bond posted by Zambon, nor the ICOSP policy constitute a motor vehicle insurance policy triggering uninsured motorist coverage under the New Hampshire statute. Both defendants have contested Zambon's allegation that the vehicle was principally garaged in New Hampshire, and Schneider has noted that the "principally garaged" language of the uninsured motorist statute was added in 1988, after Zambon and Schneider signed their agreement.

The New Hampshire uninsured motorist statute provides in pertinent part that

> no policy shall be issued under the provisions of RSA 264:14, with respect to a vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto at least in amounts or limits proscribed for bodily injury or death for a liability policy under this chapter, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles.

RSA § 264:15(I) (1993). In 1988, the New Hampshire legislature added the words "or principally garaged" to the first sentence of the statute. 1988 N.H. Laws 77:2. This amendment became

6

effective on January 1, 1989. Id. 77:6. The statute's use of prospective language, i.e, "no policy shall be issued," clearly indicates that it does not apply to insurance policies issued before January 1, 1989, covering vehicles principally garaged but not registered in New Hampshire.[3]

The parties agree that the vehicle in question was registered in Illinois pursuant to the agreement. Although there is a dispute as to whether the vehicle was principally garaged in New Hampshire during the relevant time period, this issue would be material only if any of the policies giving rise to Zambon's claim for uninsured motorist coverage were issued after January 1, 1989. The record before the court indicates that all of the documents that Zambon claims constitute a policy triggering coverage under RSA § 264:15 were "issued" before that date. Indeed, the agreement between Schneider and Zambon and the surety bond under which Schneider maintained insurance coverage for the

_____

[3]Zambon's argument that the statute should be given retrospective application is unavailing. Under New Hampshire law, statutes cannot operate retroactively if they "create any new obligations []or establish[] any new duties." Eldridge v. Eldridge, 136 N.H. 611, 615; 620 A.2d 1031, 1033 (1993) (construing N.H. Const. pt. I, art. 23). Application of the uninsured motorist statute to policies issued prior to the statute's effective date would impose a new requirement on insurance carriers -- the obligation to provide coverage for accidents caused by uninsured motorists.

vehicle both were executed in 1987,[4] and the ICOSP policy in effect at the time of the accident became effective in June 1988.

Accordingly, the court finds that the uninsured motorist statute does not apply to any of the documents that Zambon claims constitute an insurance policy covering his vehicle. As Zambon's statutory claim fails as a matter of law, the court denies Zambon's motion for summary judgment, grants Schneider's motion for summary judgment, and enters judgment in favor of ICOSP on this issue.

## II. Zambon's Claim Under the ICOSP Policy

Relying on what he claims is an ambiguity in the ICOSP policy, Zambon argues that "the policy provides for uninsured motorist coverage in the amount required by law in the state

---

[4]The court notes that the bond was posted prior to the date of the agreement. However, even if the bond is deemed to have been "issued" with respect to Zambon's tractor on the date the agreement was executed, it still would not have been issued after the effective date of the statute.

Zambon has argued that under the terms of the agreement, Schneider was obligated to purchase insurance rather than merely posting a bond, and that had Schneider fulfilled its obligations, it would have had to procure an insurance policy at some point in 1989. The argument is unavailing. The agreement did not require Schneider to purchase insurance, but "to maintain insurance coverage for the protection of the public pursuant to 49 U.S.C. § 10927 and the regulations of the [Interstate Commerce] Commission." Accordingly, Schneider's decision to post a surety bond in compliance with 49 C.F.R. § 1043 did not violate his duties under the agreement.

8

where the vehicle is principally garaged -- in this case, New Hampshire."  Zambon's Reply to ICOSP's Objection to Zambon's Motion for Summary Judgment at 4.  However, even assuming _arguendo_ that the policy is ambiguous and that New Hampshire law provides the baseline amount of uninsured motorist coverage required under the ICOSP policy, Zambon's argument does not support his claim that he is entitled to coverage.  As discussed in Part I, _supra_, New Hampshire law did not require motor vehicle insurance policies issued prior to January 1, 1989, to provide uninsured motorist coverage to vehicles not registered in New Hampshire.  Thus, even if it incorporated New Hampshire's uninsured motorist statute, the ICOSP policy in effect at the time of the accident would not have provided any coverage to Zambon, whose vehicle was registered in Illinois.  Zambon's claim based on the terms of the policy fails as a matter of law.


## Conclusion

Zambon's motion for summary judgment (document no. 8) is denied.  Schneider's motion for summary judgment (document no. 9)

9

is granted.  Judgment is entered in favor of ICOSP.  The clerk is ordered to close the case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
Chief Judge

March 15, 1996

cc:  Edward M. Van Dorn Jr., Esquire
     Robert G. Whaland, Esquire
     Andrew D. Dunn, Esquire