Foster v. GE                        CV-96-151-SD  09/02/98
                UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


<u>Walter H. Foster III</u>;
<u>Foster Steam Turbine</u>
 <u>Consultants, Ltd.</u>


<u>      v.</u>                              Civil No. 96-151-SD


<u>General Electric Co.</u>;
<u>John Welch</u>;
<u>Robert Nardelli</u>



                          O R D E R


     Foster Steam Turbine Consultants, Ltd. (FSTC) and Walter H.

Foster III allege that defendants General Electric Company (GE)

and its corporate executives interfered with their business

relationships.  Plaintiffs filed claims for defamation; civil

conspiracy; tortious interference with business relationships;

interference with the right to work; negligence; respondeat

superior; negligent hiring, training and supervision; and breach

of contract.  Presently before the court are four motions:

defendants' motion for summary judgment; a motion for summary

judgment filed by defendants Nardelli and Welch; defendants'

motion to strike the affidavit of Walter Foster; and plaintiffs'

assented-to motion to exceed page limit.  Objections have been

filed to the first three motions; the motion to exceed page limit is herewith granted.

Background

Walter H. Foster (Foster) was employed at GE for a period in excess of twenty-five years. On May 1, 1995, Foster was permanently laid off as part of GE's reduction in its workforce. Under GE policy, laid-off employees had to submit for inspection and approval any property or personal effects they wanted to remove from the plant. Before leaving, Foster submitted several boxes of papers to a GE inspector. He was denied approval to remove some of the papers, which were seized by the inspector.

Shortly after Foster left GE, he began his own business, Foster Steam Turbine Consultants, and began representing GE customers as an inspector, consultant, and auditor. Foster was permitted unescorted access to several GE plants to conduct his business as an inspecting agent for his customers. In the fall 1995, GE officials decided to terminate Foster's access to GE facilities, citing as the reason his attempted removal of proprietary information when he was laid off.

## Discussion

### 1. Standard for Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56 (c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). The court's function at this stage is not to "'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

The moving party has the burden of establishing the lack of a genuine issue of material fact. Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986). The court views the record in the light most favorable to the nonmoving party, granting all inferences in favor of the nonmoving party. Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991). To survive summary judgment, the nonmoving party must make a "showing sufficient to establish the existence of [each] element essential to that party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986), and cannot merely rely on allegations or denials within the pleadings. LeBlanc v. Great Am. Ins. Co., 6

F.3d 836, 841 (1st Cir. 1993), <u>cert. denied</u>, 511 U.S. 1018 (1994); <u>Anderson</u>, <u>supra</u>, 477 U.S. at 256.  When reviewing a summary judgment motion, "'[t]he question is not whether there is literally *no* evidence favoring the non-movant, but whether there is any upon which a jury could properly proceed to find a verdict in that party's favor.'"  <u>Caputo</u>, <u>supra</u>, 924 F.2d at 13 (quoting <u>De Arteaga v. Pall Ultrafine Filtration Corp.</u>, 862 F.2d 940, 941 (1st Cir. 1988)).

## 2.  Defendants' Motion for Summary Judgment

### a.  Defamation

GE seeks summary judgment on Foster's defamation claim.  To establish defamation, a plaintiff must show that the "defendant failed to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party."  <u>Independent Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, Inc.</u>, 138 N.H. 110, 118, 635 A.2d 487, 492 (1993) (citing Restatement (Second) of Torts § 558 (1977); 8 Richard B. McNamara, New Hampshire Practice, Personal Injury, Tort and Insurance Practice § 2 (1988)).  A statement is defamatory if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  Restatement, <u>supra</u>, § 559.  The

4

court must "consider all the words used, not merely a particular phrase or sentence." Information Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 784 (1st Cir. 1980).

The first defamatory statement alleged by Foster was made by Donald Leger, a product director at GE. Leger wrote one of plaintiff's clients, Phil Bader of the Dresser Rand Corporation, in essence, that GE prohibited Foster from entering GE facilities. Leger wrote, "Your customer has engaged an agency, Foster Steam Turbine Consultants, Ltd., . . . with whom we will no longer do business. And, as a result, their privilege to enter into or work at our facilities has been revoked." Plaintiffs' Exhibits in Support of Their Opposition to Defendants' Motion for Summary Judgment, Exhibit 29. Later, Leger explained further to Bader, "please be assured our reasons deal with his prior employment with us and not his performance as an auditor." Id., Exhibit 30.

Similarly, Charles Beck, a GE Power Systems employee, made the following statement to ICI Purchasing and Supply Company, a potential client of plaintiff. "In principal Seller has no objection to inspection of progress by Buyer or Buyer's designated agent, however Mr. W. Foster is not acceptable to witness any inspections or witness points in GE's facilities." Id., Exhibit 27, at 2. To explain the reasons for excluding

5

Foster from GE facilities, Leger wrote, "the decision to ban Walt Foster or any of his associates from GE facilities was primarily due to events prior to his involvement on the Pertamina project." Id., Exhibit 36.

A reasonable interpretation of these statements is that Foster committed wrongful acts against GE that justified banning him from GE facilities. Such allegations of wrongdoing would tend to harm Foster's reputation, and, if untrue, would constitute defamation.

The next defamatory statement alleged by Foster was made in February 1996 by Grace Matthews, in-house counsel for GE, who spoke with Wayne Webber, an attorney with VICO, Foster's customer, concerning the reasons for GE's lock-out of Foster. Webber asked Matthews if Foster had done anything "illegal." In response, Matthews read to Webber the following sentence from a letter previously written by Foster to GE personnel: "I then boxed personal items and items that I considered non-proprietary for removal from the plant." Id., Exhibit 36, at 68 (Matthews Deposition). It is a reasonable inference that Matthews was implying, without directly asserting, that Foster had wrongfully taken proprietary information from GE.

First, GE argues that Matthews merely repeated Foster's own words to Webber, which cannot constitute defamation. However,

6

GE's position is incorrect.  It is axiomatic that the meaning of words varies with context.  Foster's words carried a different meaning when repeated by Matthews in the context of a conversation with Webber.  Second, GE argues that Foster had already told VICO personnel that GE locked him out because of a dispute over the document removal incident.  Without authority, GE asserts that "[a]s a matter of law, it cannot constitute defamation for a party to convey information to a third party that has already been conveyed to that third party by the plaintiff himself."  Defendants' Memorandum in Support of Motion for Summary Judgment at 21.  Once again, GE's position is incorrect.  If a plaintiff tells a third party that the defendant has made derogatory allegations against plaintiff, it does not give the defendant license to make those derogatory allegations directly to the third party.

The next defamatory statement alleged by plaintiff was made by George Gunderson, a GE employee, who allegedly told some of Foster's clients that Foster had stolen GE documents.  However, plaintiff has submitted no evidence that Gunderson made such statements.  Plaintiff's memorandum claims that Foster's students in Indonesia told him that Gunderson called Foster a thief.  The memo erroneously cites Foster's affidavit, which does not allege such a conversation between Foster and his Indonesian students.

7

Furthermore, there is absolutely no evidence of when or where Gunderson allegedly told the Indonesian students that Foster was a thief. There is a "well-established rule that *defamation* claims must clearly identify the time and place of the alleged defamatory statements." Mesiti v. Microdot, 739 F. Supp. 57, 66 (D.N.H. 1990). Defendant's motion for summary judgment must be granted as to the alleged defamatory statements by Gunderson to the Indonesian students.

The next defamatory statements alleged by plaintiff are certain intra-corporate statements accusing Foster of stealing proprietary information. Defendants claim these statements were privileged under Chagnon v. Union Leader Corp., 103 N.H. 426, 438, 174 A.2d 825, 833 (1961), cert. denied, 369 U.S. 830 (1962), which provides, "A conditional privilege . . . is established if the facts, although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds of its truth." Defendants claim the intra-corporate statements were made in good faith to protect GE's interest in proprietary information, while plaintiff claims the statements were made in bad faith solely to tarnish his reputation.

This court has previously ruled that "the determination of the existence of . . . . a conditional privilege must be made by

8

the trier of fact." Chamberlain v. 101 Realty Inc., 626 F. Supp. 865, 871 (D.N.H. 1985) (citing Pickering v. Frink, 123 N.H. 326, 329, 461 A.2d 117, 119 (1983)). Thus it is a jury question whether GE employees published the allegedly defamatory statements in good faith.

The next defamatory statement alleged by plaintiff was made in February 1996 at a meeting in Jakarta, Indonesia, when Gunderson, a GE employee, publicly called plaintiff a "liar" and "incompetent." Defendant argues that these statements merely express opinion, and are protected under Gertz v. Robert Welch, Inc., 418 U.S. 323, 339 (1974) ("Under the First Amendment there is no such thing as a false idea."). However, the Court has rejected an "artificial dichotomy between 'opinion' and fact," Milkovich v. Lorain Journal Co., 497 U.S. 1, 19 (1990), because expressions of "opinion" may nonetheless imply an underlying objective evaluation that is "susceptible of being proved true or false." Id. at 21. Summary judgment on the grounds that the statement constitutes protected opinion is only appropriate if no reasonable person could conclude that the communication implies a defamatory statement of fact. See White v. Fraternal Order of Police, 909 F.2d 512, 518 (D.C. Cir. 1990).

A reasonable person could conclude that Gunderson's opinion of Foster's competency and probity nonetheless implies an

9

underlying factual basis for the opinion that Foster performed incompetently and that he lied. Thus it is a jury question whether the statements constitute expressions of opinion.

Defendants claim that Foster admitted in deposition that he never heard Gunderson call him a liar. The assertion that the word "liar" was used comes from Foster's wife. See Plaintiffs' Opposition, supra, Exhibit 37, Deposition of JoAnn Quinn-Foster, at 58. Defendants claim that plaintiff cannot create an issue of material fact by contradicting himself. See Colantuoni v. Alfred Calgagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."). However, there is obviously no contradiction here. Simply because Foster did not himself hear Gunderson call him a liar does not mean that Foster's wife did not hear that.


b. Civil Conspiracy

Plaintiff alleges that defendants conspired to put Foster out of business by defaming him and interfering with his contractual relations. The elements of civil conspiracy are:

    (1) two or more persons (including corporations);
    (2) an object to be accomplished (i.e., an

10

> unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.

Edwards v. Baker, 130 N.H. 41, 47, 534 A.2d 706, 709 (1987).

Foster has provided absolutely no evidence of an agreement or concerted action to defame Foster or interfere with his business relations. Thus defendants' motion for summary judgment on the civil conspiracy claim is granted.

### c. Tortious Interference With Business Relationships

Plaintiffs contend that defendants wrongfully interfered with contracts between plaintiffs and three companies, ICJV, ICI, and PT Badak. The elements of a prima facie case of tortious interference with business relationships are: "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with it through improper motive or means; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct." American Private Line Services v. Eastern Microwave, 980 F.2d 33, 36 (1st Cir. 1992) (footnote omitted).

GE claims that the interference with Foster's contractual relations was privileged because the means of interference was

11

GE's assertion of its right to exclude Foster from its property. GE claims that its property rights are absolute. Let it be settled once and for all, ownership rights never have been, are not now, and never will be absolute. It would be impossible, except for the most static uses of property. With dynamic property uses, irreconcilable conflict between property owners is unavoidable. Owner A wants to operate a smoke-billowing factory, and Owner B wants his quiet family home to be smoke free. Both of their property rights cannot be absolute, and one of them must be subject to legal limitations. Defendant's correctly point out that "[t]he power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982). However, even the right to exclude must be subject to limitations. As one court has noted, "The privilege of a property owner to arbitrarily exclude others . . . may be qualified when its exercise is seen to interfere with other interests the protection of which is deemed to be paramount." Posa v. Miller Brewing Co., 642 F. Supp. 1198, 1205 (E.D.N.Y. 1986). For instance, under the privilege of necessity, a person may trespass upon the property of another to save himself or his own property, or even a third person or his property from a harm greater than that caused by the trespass.

PROSSER AND KEETON ON TORTS 147 (5th ed. 1984).  Furthermore,

"society's interest in a free and competitive marketplace,"

Posa, supra, 642 F. Supp. at 1205, may trump an owner's right to

exclude.  As an extension of this principle, protecting

contractual relations may be deemed paramount to the right to

exclude.  The RESTATEMENT (SECOND) OF TORTS § 767 (1977) lists the

following factors as relevant to whether interference with

contracts is wrongful:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and
> (g) the relations between the parties.

The nature of the actor's conduct, even the admittedly

important prerogative of excluding from property, is simply a

factor, but is not dispositive.  In sum, it is always a balance

of interests, and it is entirely unhelpful to speak in terms of

absolute privileges.

One of the important factors that must be balanced is the

motive that animated GE's assertion of its right to exclude.  GE

claims it barred Foster from GE facilities because Foster

attempted to remove proprietary information.  Memorandum of Law

13

in Support of Motion of Defendants John Welch and Robert Nardelli for Summary Judgment, Exhibit G. Foster claims GE barred him for more sinister motives; namely, to interfere with his business. Plaintiffs' Objection to Motion of Welch and Nardelli, Affidavit of Walter H. Foster ¶ 4. Since GE's state of mind is contested, there remains a genuine issue of material fact to be determined by a jury. Flesner v. Technical Communications Corporation, 410 Mass. 805, 809, 575 N.E.2d 1107, 1110 (1991); Pederson v. Time, 404 Mass. 14, 17, 532 N.E.2d 1211, 1214 (1989) (generally accepted rule disfavors granting summary judgment where party's state of mind constitutes essential element of cause of action); Mitchell v. Aldrich, 112 Vt. 19, 24, 163 A.2d 833, 836 (1960) ("Whether an occasion exists which justifies the invasion of another's contract or business relationships by the defendant is generally a question for the jury."). Defendants' motion for summary judgment on the tortious interference claim is therefore denied.

### d. Intentional Interference with the Right To Work

Plaintiff's compliant alleges intentional interference with the right to work, citing the century-old case Smyth v. Ames, 169 U.S. 466, modified on other grounds, 171 U.S. 361 (1898). However, Ames dealt with citizens' property rights against

14

interfering state regulation.  That case has no application to commercial disputes between private actors, and Foster's contrary assertion is entirely unreasonable.  Thus defendants' motion for summary judgment on the claim of intentional interference with the right to work is granted.

### e.  Negligence

GE seeks summary judgment on Foster's claim for negligence and negligent supervision.  Foster's memorandum contains only a cursory and cryptic defense of the negligence claims, Plaintiffs' Memorandum in Opposition at 45, which fails to point to even one shred of evidence.  The court is left without any clue as to the plaintiff's theory of negligence.  To the extent Foster expects this court to do his lawyering for him in constructing his negligence claims, he is incorrect.  Thus summary judgment is granted as to Foster's negligence and negligent supervision claims.

### f.  Respondeat Superior

GE moves for summary judgment on the respondeat superior claims on the ground that GE is entitled to summary judgment on the underlying torts for which GE is allegedly vicariously liable.  GE does not dispute that the employee tortfeasors were

15

acting within the scope of their employment.  As the court has
not granted summary judgment on the underlying torts, neither
will the court grant summary judgment on the respondeat superior
claim.


    g.  Breach of Contract

    GE moves for summary judgment on Foster's claim for breach
of contract.  Foster alleges that he is a third-party beneficiary
of contracts between GE and GE's customers, under which the
customers had the right to inspect GE's facilities.  The
customers hired Foster to conduct the inspection, and by denying
Foster access to GE facilities, GE has breached the contract with
its customers.  To qualify as a third-party beneficiary, the
contract must give the promisor reason to know that the promisee
has entered into the agreement, at least in part, in order to
benefit a third party.  <u>Arlington Trust Co. v. Estate of Wood</u>,
123 N.H. 765, 767-68, 465 A.2d 917, 918 (1983).  Foster has
pointed to no evidence indicating that GE knew its customers
entered into the contracts, in part, to benefit Foster.  Indeed,
none of Foster's memoranda even address the breach of contract
issue.  Parties must assert only causes of action founded upon
good faith.  Once a good faith basis for a claim disappears, it
is incumbent upon the party affirmatively to withdraw the claim.

Defendants' motion for summary judgment is granted for Foster's breach of contract claim.

## 9. Motion of Nardelli and Welch for Summary Judgment

Nardelli and Welch move for summary judgment on grounds of (1) lack of personal jurisdiction in New Hampshire and (2) lack of evidence of their involvement in the tortious conduct alleged by Foster. Foster argues that ruling on this summary judgment motion would be premature because discovery is not yet complete. Foster served interrogatories on the defendants, which have not been answered because defendants filed motions for protective orders. Those protective orders have been denied, but it is unclear to the court whether the interrogatories have been answered. The court will deny Nardelli and Welch's motion for summary judgment under Rule 56(f), which is appropriate when the requesting party "'(1) articulate[s] a plausible basis for the belief that discoverable materials exist which would raise a [genuine issue of material fact] and (2) "demonstrates good cause for failure to have conducted the discovery earlier."'" Fennell v. First Step Designs, 83 F.3d 526, 531 (1st Cir. 1996) (quoting Price v. General Motors Corp., 931 F.2d 162, 164 (1st Cir. 1991) (quoting Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1988))). Foster has meet

both requirements.  When all relevant discovery is completed, defendants may renew their motion for summary judgment.

10.  Defendants' Motion to Strike Supplemental Affidavit of Walter H. Foster III

Defendants ask the court to strike paragraphs 4 and 5 of Foster's supplemental affidavit (filed May 22, 1998) because they contradict Foster's deposition testimony.  However, Foster did testify in deposition that Gunderson called him a "liar".  Foster Deposition at 368 (attached to plaintiff's objection to motion to strike).  Therefore, Foster's affidavit stating that Gunderson called him a liar is not inconsistent with Foster's deposition.

Defendants also ask the court to strike paragraphs 7, 8, 9, and 10, which relate to Gunderson's allegedly defamatory statements to others.  As the court has granted summary judgment on the defamation claim as it pertains to those statements, that portion of the motion to strike is moot.

Conclusion

For the abovementioned reasons, the motion for summary judgment filed by all defendants (document 66) is granted as to the defamation claim (Count 1) regarding the statements from Gunderson to the Indonesian students, the civil conspiracy claim

18

(Count 2), the claims of intentional interference with the right to work (Count 4), negligence (Count 5), negligent hiring, training, and supervision (Count 7), and breach of contract (Count 8). Summary judgment is denied on the rest of the defamation claims in Count 1, on the claim of tortious interference with contractual relations (Count 3), and on the respondeat superior claim (Count 7).

The motion for summary judgment filed by defendants Nardelli and Welch (document 52) is denied.

Defendants' Motion to Strike Supplemental Affidavit of Walter H. Foster III (document 86) as regards ¶¶ 4 and 5 is denied; as to ¶¶ 7-10, the motion is moot.

Plaintiffs' Assented-To Motion to Exceed Page Limit (document 76) is granted.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

September 2, 1998

cc:   Joseph S. Hoppock, Esq.
      Ellen M. Bach, Esq.
      James K. Brown, Esq.
      Steven M. Gordon, Esq.