NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TERRY T. BRADY,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2021-2206

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-6918, Judge Joseph L. Toth.

---

Decided:  May 13, 2022

---

TERRY T. BRADY, Boise, ID, pro se.

SEAN KELLY GRIFFIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, MARTIN F. HOCKEY, JR.

---

Before NEWMAN, REYNA, and WALLACH, *Circuit Judges*.

NEWMAN, *Circuit Judge*.

Appellant Terry T. Brady served with the United States Marine Corps from 1953 to 1956. The Board of Veterans' Appeals ("BVA" or "Board") denied his claim of service connection for certain neuropathies that became manifest in 2006. The issue relates to Mr. Brady's possible exposure to radiation and whether there is a presumption of service-connection on the facts hereof. The BVA found that service connection was not established, and the Court of Appeals for Veterans Claims ("CAVC") affirmed.[1]

The record on appeal contains differing medical opinions concerning whether Mr. Brady's neuropathies relate to his military service. These medical opinions, and their balance and weight, are factual in nature, and entail no questions of law or relevant presumptions of service-connection. This court lacks authority to review such factual determinations unless constitutional questions are involved. We conclude that the appeal must be dismissed, for the issue is entirely factual, and not within our appellate jurisdiction.

## DISCUSSION

While serving with the Marines, Mr. Brady's duty station at Lake Meade Base was 65 miles from a test site at which fourteen atmospheric nuclear tests were conducted during his service. The government's evidence was from the U.S. Department of Energy National Nuclear Security Administration and estimated that Mr. Brady was exposed

---

[1] *Brady v. McDonough*, No. 19-6918, 2021 WL 2587736 (Vet. App. June 24, 2021) ("CAVC Decision."); *In re Terry Brady*, Docket No. 18-28 409A (Bd. Vet. App. July 16, 2019) ("Board Decision").

to 0.016 rems of ionizing radiation[2] at a distance of 65 miles.  The Board noted that there were "no other measurements or dose estimates of record."  Board Decision at 3.

At his discharge in 1956, Mr. Brady received a physical examination that noted certain cardiac abnormalities, but no neurological issue.  In 2006, Mr. Brady reported to his physician that he was experiencing tremors in his hands.  In 2016, Mr. Brady was diagnosed with peripheral neuropathy in his lower extremities.  He filed a claim for service connection, stating that he has experienced muscular and neurological issues since 1957.  Mr. Brady obtained an opinion from a VA doctor stating that Mr. Brady had provided information of "at least two cases where the VA determined that ionizing radiation is associated with peripheral neuropathies."  CAVC Decision at *2 (citation omitted).  Accordingly, the doctor stated that Mr. Brady's neuropathy was "related to his exposure to ionizing radiation. . ."  *Id.*  Mr. Brady also submitted the testimony of a private chiropractor linking his neuropathy to radiation exposure.  *Id.*

---

[2]    The rem is a measure of radiation dose.  "The rem is a useful unit because a rem of any radiation type should produce the same biological effect as a rem of any other type of radiation."  *Prescott v. United States*, 858 F. Supp. 1461, 1468 n.4 (D. Nev. 1994).  "In context, the average American receives .300 rem of radiation yearly from natural sources like radon gas.  Hence, a normal lifetime dose of natural radiation would be 19.5 rem."  *Caputo v. Bos. Edison Co.*, 924 F.2d 11, 12 n.1 (1st Cir. 1991).  An "average American by age 64 will receive about 6.5 rem of radiation from x-rays."  *Id.* (quoting *Johnston v. United States*, 597 F. Supp. 374, 390 (D. Kan. 1984)).

The VA provided two medical opinions that stated that the dose of radiation to which Mr. Brady had been exposed was too low to have resulted in neuropathy.

In July 2019, the Board reviewed the evidence and found that there was no causal connection between Mr. Brady's exposure to radiation in service and his present neuropathy. Board Decision at 7 (Brady's "records include no complaints of neurological problems of the extremities, and clinical evaluation of the upper and lower extremities and the feet were 'normal' upon separation from service."). The Board also determined that no presumption of service connection arose, because Mr. Brady's condition was not documented until 50 years after his service. *Id.* at 6; *see* 38 C.F.R. § 3.303(b) (presumption of service connection arises only when condition is "noted" within one year of separation after service).[3] The Board compared Mr. Brady's testimony that he had experienced neuropathy issues since 1957, with his documented statement to his physician in 2006. The Board found no service connection.

The CAVC affirmed the Board's finding of no service connection. The court referred to the Department of Energy's estimate of Mr. Brady's radiation exposure, and determined that the Board did not err in giving no weight to

---

[3]    A presumption of service connection to ionizing radiation exposure is provided for some ailments, but not the neuropathy of which Mr. Brady complains. The presumption of service connection exists for certain diseases (mostly cancers) caused by ionizing radiation. 38 U.S.C. § 1112; *see Ramsey v. Gober*, 120 F.3d 1239, 1243–44 (Fed. Cir. 1997) (discussing statute). The VA has expanded the legislated presumption of service connection by regulation to additional diseases (again, mostly cancers). 38 C.F.R. § 3.311. There is no provision for a presumption of service connection for peripheral neuropathy.

Mr. Brady's medical opinions, for those opinions did not mention the very low dose of radiation to which Mr. Brady could have been exposed.

The CAVC also found no clear error in the Board's treatment of Mr. Brady's testimony that his symptoms were present at his separation from service. The court stated that 10 years had passed between 1995, when the nuclear testing at issue was declassified, and Mr. Brady's first report to a physician of neuropathy in 2006. *See* CAVC Decision at *4 ("more than 20 years passed between when Mr. Brady said he could talk about his service and when he filed his claim." (citation omitted)). Mr. Brady reported to his physician in 2006 that the tremor in his hands was "new." Consequently, the court determined that the BVA did not clearly err in giving no weight to Mr. Brady's contention that he refrained from reporting his tremor because his nuclear exposure had been classified.

"Unless presented with a constitutional challenge, we lack jurisdiction to review any 'challenge to a factual determination' or any 'challenge to a law or regulation as applied to the facts of a particular case.'" *Cameron v. McDonough*, 1 F.4th 992, 994 (Fed. Cir. 2021) (quoting 38 U.S.C. § 7292(d)(2)). Mr. Brady argues that the evidence was not uniformly against service connection, citing the conflicting medical opinions. He also cites evidence that even low doses of radiation can cause radiation-linked disease. Brady Br. at 4–6. He states, and precedent supports, that the existence of doubt favors service connection in interpreting statutes and regulations. *E.g.*, *Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("interpretive doubt is to be resolved in the veteran's favor"). Mr. Brady states that, had the veterans' authorities taken "due care" in processing his claim, they would have made a different factual finding regarding service connection. He argues that the BVA's holding is "prejudicial error" and is subject to our appellate review. Brady Br. at 4–6.

Mr. Brady's claim rests on the factual question of whether the radiation exposure he experienced during 1953–1956 was or could reasonably be causally related to the neuropathy he medically reported in 2006. The Board and the CAVC determined that the facts did not support a causal relationship between Mr. Brady's radiation exposure and his neuropathy. We discern no error or misinterpretation of law. Our jurisdictional statute precludes our re-weighing the evidence and re-finding the facts. 38 U.S.C. § 7292(d)(2). Mr. Brady's appeal must be dismissed.

**DISMISSED**

COSTS

No costs.